My police court opposing counsel, this is a fairly simple case in that there was a social security hearing, an unfavorable result was received for the claimant, the claimant appealed to the appeals council, the appeals council remanded it and told the administrative law judge you will hold another hearing and you will take vocational testimony and do some other things. They had the hearing, the ALJ did not take any testimony from a vocational expert. Then he ruled that the claimant could go back to his previous employment as a truck driver, as an over the road truck driver is the word that is used in the ALJ's decision. The ALJ said the claimant has the maximum residual functional capacity to perform work at all exertional levels. He can no more than occasionally interact with the public, coworkers and supervisors. Then he went on to say that I find that the claimant can perform his past relevant work as an over the road truck driver with the residual functional capacity described above. First, as Judge Nosey in the Eastern District held, found that this was a legal error. The Social Security Administration tried to say, well, you know, he really didn't have to do it. He said no. He said they told him you will do it and he didn't do it so that was a legal error. However, Judge Nosey said that the decision was still supported by competent and substantial evidence because if you look at Exhibit E, one of the forms that the claimant fills out when they file for Social Security Disability, as I'm sure the court is aware, there are many forms that are filled out. They asked him what jobs did you do and he listed them. Some of them were truck driving, some of them weren't. He asked what did you do at the jobs or what did you do all day and he listed what he did all day. Nowhere did it say, do you interact with the public more than occasionally or what's your interaction with the public? You know, it's just a general question, what do you do all day? He said, well, I would drive a truck, fill out log books, etc. Well, the judge said that, well, we can take from his answer from that general question the specific inference that he did not interact more than occasionally with the public. I think that's illogical. I don't believe that's substantial evidence. Also believe that, and I made this argument and again, I researched it extensively, only found one district court case that touched on it. I believe that it was the rule of the case. The appeals counsel said that he could not go back to work as a truck driver. And then that became the rule of the case. The judge then had to look, well, is there any other things that he could go back to? You know, it may be that in administrative decisions that you don't follow the rule of the case law. I think that you do. I think common sense tells us that a truck driver has to interact with the public more than on an occasional basis. Now, the opposing counsel has said, well, you know, you sit in the truck all day and you don't talk to anybody. Well, that's probably right. That's because you're watching to make sure somebody doesn't pull out in front of you, or you don't pull out in front of somebody else, or you don't have a collision, or that when you stop at the way stations, you know, you interact with those types of people, law enforcement. I think that the court can simply take judicial notice that an over-the-road truck driver interacts more than occasionally with the general public. Other than that, I really have nothing else to say unless you have some questions for me. So what relief specifically do you ask from us? What should we do? Well, I think that you have to remain the case for a new hearing, in which case that the claimant's going to have a new hearing. I don't think there was substantial evidence to his past work as a truck driver. I don't believe that's supported. Now, I guess, you know, he didn't go any further than that. You have to send it back to whether or not at step five there's work that he can do. Isn't that exactly why Judge Nose said it was not reversible error for the administrative law judge not to call a VE? I mean, why call a VE if there's no evidence to support the fact that this person might not be able to return to past work? I mean, what would the VE have testified to in this case? Well, the VE could have, one, the VE could have testified that, and I've seen this at many Social Security hearings that I've participated in, he could, while he's not required to under the Eighth Circuit precedent, he could have testified to whether or not he, given the limitations that the judge found, he could perform the duties as truck driver. I see, because the VE would know more about that than the administrative law judge. That would be, yes, I think so. I mean, that's the purpose you have a vocational expert for. You know, the only, and if I may, go ahead, I'm sorry. I was going to say, you have time for rebuttal. We'll see what the governor's lawyer says. All right, thank you, Your Honor. Mr. Murphy, you may proceed. Thank you. May it please the court? Counsel? I think you really got to the core issue in this case. There is nothing the court can really do in this case. The decision before the court, the final decision, which is the only thing that the court can review according to 42 U.S.C. 405G, which is the authorizing statute for things to be here, says the court can consider the final decision of the commissioner. The final decision of the commissioner in this case is the second ALJ's decision from October 2010. As long as that decision is supported by substantial evidence, then the court must affirm the decision of the commissioner. In other words, we should not concern ourselves with what the appeals commission said in its remand order? Essentially, that's essentially, as far as the commissioner is concerned, it's what went before administratively. The case went back. The ALJ issued a new decision. By the way, the evidence was a little bit different in the second one. The time period was a little bit shorter. They changed the alleged onset date, and there was some additional evidence at the end, and the ALJ redid it. And then something we didn't talk about enough in our brief is that the plaintiff then filed a letter or, I suppose, a brief with the administration asking the appeals council to reconsider it. Because essentially, his point back at the administrative level was the second ALJ decision didn't follow your instructions because it didn't have any VE testimony. In fact, I think the brief from the plaintiff said the ALJ's decision had defied the appeals council's order. The appeals council, and usually this is on pages one through five or so of the administrative transcript, simply denied any further review. It indicated that it had reviewed the additional evidence that the plaintiff had provided, which had included the brief where they had accused the ALJ of defying the appeals council's original order, and the appeals council simply denied review. So the final decision, and this is the decision that's approved by the appeals council as well, is the second decision of the ALJ from October 2010. So are you also making the point that if the appeals council felt that its previous remand had not been followed, it could have seized on that at the second request? That's right, because we weren't done yet at that point, at least until the appeals decision was sufficient and it followed the order that they had issued. Now, in your brief, you point out that the ALJ found that Mr. Hill could retain on the ability to perform work except he could tolerate only occasional contract with supervisors, co-workers, and the public. Now, this morning we're told that he has trouble with people, but in your brief you say that he's not challenging the substantive findings. That was my understanding. Is the appellant challenging the finding that Mr. Hill has only occasional contact with work supervisors and the like? I didn't interpret him as having challenged it, but I do think that the ALJ's, that RFC, is supported by substantial evidence. The ALJ explained it in his decision. Don't these truck drivers have to deal with the weight supervisors and highway patrolmen and safety inspectors? They're stopped. They pull over for their road check. The highway people come and check the brakes, the lights, the air hoses, the whole thing. Sure. He can tolerate- I mean, this man has trouble with all due respect to him. He can't even get along with his own mother. I'm not belittling him, but the testimony is rife that he has to live in a little separate shack because he can't be around his mother. Yes. Well, the ALJ found that he could tolerate up to occasional contact with people, and I don't think- occasional, that's the defined term to this agency. That means up to a third of the day. Was there much evidence as to how much contact an over-the-road truck driver has with highway patrolmen, weight supervisors, Department of Transportation safety inspectors? The ALJ is entitled to make reasonable inferences from the record, and keep in mind it's his burden, it's plaintiff's burden, to show that he can't perform his past relevant work. And what was the testimony on that, on dealing with highway supervisors and the like? Well, there isn't any evidence that he was dealing with. So we're worrying about something that there's nothing in the record to support or worry about? That's right, and it was to prove those things. Right, he talked about being in the truck for his first hearing. He talked about being in the truck most of the day, up to 13 or 14 hours of the day, doing long hauls. There's no indication that he was dealing with a lot of people during that time. Certainly, plaintiff talks about there being hundreds of interactions during the day. There's certainly no evidence of that in the record. I would like to address his comments about law of the case as well. Law of the case doesn't apply here at all for the same reasons that we're focusing on the second ALJ's First of all, the Appeals Council's remand order did say that the ALJ will have VE testimony, but it did not instruct the ALJ in any particular findings, any particular findings regarding the five-step sequential evaluation process. And in fact, if you look at the record, I mean, I'm sorry, if you look at the Appeals Council's instructions as a whole, it basically goes through, it gives four instructions. It's on page 89. It tells the ALJ to consider plaintiff's RFC again, to do a mental evaluation using the special technique, which the ALJ did in this case. And the second decision, he hadn't in the first. Third, it told the ALJ, and this is sort of key, give further consideration to whether plaintiff has any past relevant work to which he could return. In other words, I think the Appeals Council's order opened the door to a step four finding after remand. And then the fourth instruction, which is the one plaintiff relies on, obtain evidence from a VE. Those are all procedural matters. And in fact, the fourth instruction is contemplating more step five. But as the Appeals Council had already stated, and as our rules say, you can decide a case at step four. You don't need to go on to step five, and you don't need vocational expert to decide a case at step four. As I said, the Appeals Council, again, reviewed this whole administrative process, including their own order and the ALJ's reaction to it, and didn't see any reason to do any further proceedings. Here, the ALJ made a finding that Hill's testimony was less than credible, if I understand it correctly. If that is so, doesn't it seem somewhat inconsistent for the ALJ to be relying on only occasional interaction with other people, such as Highway Patrol, etc., etc.? Well, I don't think the ALJ found him entirely not credible. A lot of his sort of his RFC finding is based on plaintiff's complaints. Well, it's kind of like being a little bit pregnant. Either you are or you're not credible. Now, I realize that can change in maybe the context of a single paragraph. I don't know. But it seems to me that there's just a little... Well, it's relatively common for ALJs to find a person not disabled based on his description of his past relevant work, even though most cases, basically, plaintiff has to be found not credible in order for us to find them not disabled, essentially, because if they were credible, then we'd find everyone disabled. So that's the Zealer case, essentially, which is in my brief. And the ALJ in that case relied on the person's description of his past relevant work, or it might have been a woman, but just relied on their description of the work, even though they had found them not credible. Back to the Appeal Judges Council's order, the council finds that even an SVP4 job, that's truck driver, exceeds the assessed residual functional capacity to perform low-level semi-skilled tasks. Further consideration should be given to whether we claim it has any past relevant work. So they've ruled out the truck driver. Based on the RFC from the previous ALJ's decision, they had ruled out the truck driver. The RFC was different in the second decision. How many chances did the Social Security Administration get? I don't think there's a limit on how many chances they get. We'd like to get it right before it comes before the court, and I think this case was right. It's supported by substantial evidence. The RFC in the second case was different. The court's question is whether that RFC, for example... And if it was, then it is law in the case. Well, the Appeals Council's order stated that the ALJ was to reconsider those things, and it said that the RFC... You should have reconsidered something that the council's already found to be a fact. I shouldn't have said reconsider. They told the ALJ that his step four finding was inconsistent with the RFC in that case, and the ALJ on remand, the RFC was different, and thus the subsequent steps were different. And at the remand hearing, what further evidence was put in on this man's ability to be an over-the-road truck driver? I don't recall any further discussion of his over-the-road truck driving. It's an interesting point. I don't think I've ever seen one quite like it. I'll go on with your argument. I'm sorry. I shouldn't have interrupted. Sure. I would like to talk about the point. I think it's important because it's something that I noticed. The ALJ's residual function capacity in the second decision is different from the one in the first decision, and that's really key, too. Plaintiff doesn't really raise it in his brief, so I hadn't discussed it at length in my brief, but as long as substantial evidence supports that final decision, the decision, the RFC in the second decision, the court has to affirm, and I think there clearly is evidence supporting the different RFC in the second case. The ALJ actually specifically discussed his ability to concentrate and found that he didn't really have any limitations in concentrating, unlike the previous decision. And there is evidence to support that. For example, plaintiff was seeking treatment in early 2007. On page 296 of the record, it said that he had the ability to concentrate. His ability to concentrate was fair. He started medications, and on 302, a little bit later, it said medications were helping. On 310, it said his ability to concentrate was good. Then the medical records, the best ones we have are really from his treating psychiatrist, Dr. Mirza, I think is how you pronounce his name, who plaintiff didn't start to see until about July 2008. And those are notable because, again, plaintiff is complaining about difficulty with his family and social difficulty. When he takes his medications, his medications are helping, he says. But there isn't any indication in Dr. Mirza's records that he noticed that he had any difficulty concentrating. Again, it's plaintiff's burden to show that he has a certain RFC, and there's no evidence. He hasn't shown that he has RFC for anything other than an inability to handle more than occasional contact with supervisors, coworkers, or the general public. I've read so many of these over the years. It's sometimes frightening because they're, I think all of us may, some of us may suffer from the same things, over-ideational rumination. What's that? Daydreaming? Daydreaming? Well, I guess I shouldn't have. But it is interesting to read these. I'm sorry for interrupting. I don't think I have anything further if the court doesn't have any further questions for me. Very well. Mr. Moroney? Thank you, Your Honors. You know, the judge held the hearing and he came up with a residual functional capacity. There's evidence to support that, what the residual functional capacity was. I'm not disputing that. What I'm disputing is whether or not truck driving fits within, there's evidence that truck driving itself fits within that residual functional capacity. And the judge referred to Exhibit E, both the judge, the magistrate, Judge Nossi, and the Administrative Law Judge Muldoon, and said because the claimant, we asked the claimant what he did all day, and he didn't say that I don't interact, or that I either interact with people or don't interact with people, we're going to assume that he has no more than occasional interaction with the public. I mean, they didn't ask him the question. So how, and they're penalizing him for failing, they're making an assumption because an answer that doesn't exist is evidence for, you know, it's hard for me to even put it in words. And I tried to do it in my brief and I read my brief over and I botched that. But basically, they asked him a general question. What do you do all day? And he said what he did all day. And he never mentioned whether or not he had any contact with the public. And because he never mentioned that, the judge uses that answer to infer that he did not, that he was not required to interact with the public. Well, was there a hearing? There was a hearing and the judge, I don't think, ever asked that question at the hearing. Was he represented? He was represented, yes. Why didn't his attorney ask the question? I think the attorney asked... Elaborate to make the record more complete. That I can't tell you, Your Honor. I don't know. What's in the record is in the record and transcript. Is it your argument, you know, as our cases always say, that whether represented or not, the ALJ has a duty to develop the record? That is correct, Your Honor. The ALJ does have the duty to correct the record. Also, the ALJ has the duty to follow what the Appeals Council tells the ALJ to do. You know, in a former life, I was a workers' compensation judge for the state of Missouri. If, you know, if the Labor Commission told me I had to do something, or the Court of Appeals told me I had to do something, then I had to do it. You know, you can't... You know, here, the judge simply didn't do it. And that's why Judge Nossi said it was an error of law. It was probably prejudicial because he never addressed the other factors, whether or not there were other jobs that he could do. You know, it... You know, Ms. Heckemeyer, who tried this case before me, and wrote the letter to the Appeals Council, was really pretty, was probably a very shrill letter to them. I want to have more respect for Judge Muldoon than that. However, you know, it's like you said, you know, how many chances do you get? You know, for whatever reason, he decided... I guess he decided he wasn't going to give this person benefits. And so he agreed to some sort of a conclusion not to do it. I think you said earlier you found one... Did you find one district court case on this? What did you say earlier about this? Law of the case. This law of the case. Yeah, and it's at point... Point two of the brief, and that was Jordan v. Ostrow from the Eastern District of Oklahoma, March 31st of 2000. Well, that being the case, with the scant nature of case law on this point, why shouldn't the fact that the Appeals Council didn't... Didn't note this, didn't call the ALJ to task, didn't send the matter back on the second request for review. I mean, why shouldn't we just view this as something that the administration and their ALJs and the Appeals Council should work out between themselves? If it wasn't important enough for the Appeals Council to note it or to correct it, to send it back and point out, Mr. ALJ, you didn't follow our instructions. Since that hasn't happened, why should that be a matter for the court? Oftentimes, the Appeals Council here gets all of these cases thrust at them. Some they decide to review, some they don't. Some they just say, well, we're not going to review the case. We're not going to make a determination whether it was right or wrong. We're simply not going to review it. That's what they did here. Furthermore, the court oftentimes reverses what the Appeals Council does. Sometimes it affirms it. Sometimes it reverses what the Appeals Council does. Doesn't necessarily mean the Appeals Council was correct in this case by not enforcing its own order. But again, even that, the issue is whether or not, given the procedural posture of this case, whether or not there's evidence to support the judge's determination that he can go back to work as a truck driver. Again, the only evidence that supports that is the non-answer to that general question. I don't believe that that evidence supports it. I simply don't believe it's supported by competent and substantial evidence, in which case you're going to have to send it back for another hearing. If there's no other questions, I don't have anything else. Very well. Appreciate the court's time and consideration. It was a lot of fun. Thank you. Yes, the case is submitted. We'll take it under consideration. And the court will be in recess until 9 o'clock tomorrow morning.